**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAROLD SANFORD CARTER III,** | : | **CIVIL ACTION NO. 1:20-CV-1923** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ULLI KLEMM, DARRELL WIREMAN,** | : | |
| **JILL J. SPYKER,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Harold Sanford Carter III ("Carter") commenced this action pursuant to 42 U.S.C. § 1983 alleging that he was denied the right to practice his religion in violation of the First and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. 1). The sole remaining defendant is Darrell Wireman, former Chaplaincy Program Director at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"). Defendant Wireman moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 32). We will grant defendant's motion and enter judgment in his favor.

I.     __Factual Background & Procedural History__[1]

The claims giving rise to this action stem from Carter's incarceration at SCI-Huntingdon.[2]  (Doc. 34 ¶ 1).  Named as defendants were Ulli Klemm, Jill Spyker, and Darrell Wireman.  (Id. ¶ 2).  Defendants previously filed a partial motion to dismiss based on lack of sufficient personal involvement and failure to state a claim with respect to all claims related to participation in a Wiccan study group, access to Wiccan foundational texts, access to a quartz crystal and a Thor's hammer, and access to Wiccan broadcast video.  (Id. ¶ 3).  On August 25, 2021, the motion was granted, the forementioned claims were dismissed, and defendants Klemm and Spyker were dismissed from this action.  (Id.)

On October 12, 2021, defendant Wireman filed an answer to the complaint.  (Id. ¶ 4).  Carter alleges that defendant Wireman violated his right to practice his

---

[1]  Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from defendant's Rule 56.1 statement of material facts.  (Doc. 34).  Carter did not file a response to defendant's statement of material facts.  The court accordingly deems the facts set forth by defendant Wireman to be undisputed.  See LOCAL RULE OF COURT 56.1; see also Doc. 36 ¶ 2 (advising Carter that failure to file a responsive statement of material facts would result in the facts set forth in defendant's statement of material facts being deemed admitted).

[2]  Carter is no longer incarcerated.  (See Doc. 26).

Wicca religion in violation of the First and Fourteenth Amendments and RLUIPA. (<u>Id.</u> ¶ 5).  For relief, Carter seeks monetary damages.  (<u>Id.</u> ¶ 6).

On August 13, 2018, Carter submitted a Religious Accommodation Request seeking "apples, pears, pork, and ginger tea[] to celebrate my wiccan sabbat [sic] of Yule on December 21st (Holy day feast)."  (<u>Id.</u> ¶ 10).  Defendant Wireman interviewed Carter with respect to this accommodation request.  (<u>Id.</u> ¶ 11).  On September 24, 2018, defendant Wireman completed a Religious Accommodation Evaluation Form wherein it was recommended that Carter's request be denied based on security reasons and the lack of an organized Pagan group at SCI-Huntingdon.  (<u>Id.</u> ¶ 12).  Pursuant to DC-ADM 819 (Religious Activities Procedures Manual), Carter's accommodation request was reviewed by the Religious Accommodation Review Committee ("RARC") on December 3, 2018.  (<u>Id.</u> ¶ 13).  The RARC upheld the recommended denial of Carter's accommodation request because there was no Pagan-Wiccan group meeting at SCI-Huntingdon at that time, as required by Department policy for the observance of religious holy day feasts.  (<u>Id.</u> ¶ 14).  However, by way of accommodation, Carter was advised that the Department ensures that pork is served in December to coincide with Yule.  (<u>Id.</u> ¶ 15).  He was further advised that he could take fresh fruit from mainline meals to celebrate Yule in his cell.  (<u>Id.</u>)  Carter was also informed that he may purchase tea from the commissary or request that the commissary consider adding ginger tea to the list of available items.  (<u>Id.</u> ¶ 16).

In 2018, Food Service Departments statewide were to ensure that one of the two times that pork was served to the inmate population during the month of December coincided with Yule, namely on December 21, 2018.  (<u>Id.</u> ¶ 17).  Pork and an apple were to be served on December 21 via a menu swap with December 22nd.  (<u>Id.</u> ¶ 18).  SCI-Huntingdon ultimately served pork and an apple to coincide with Yule on December 22, 2018.  (<u>Id.</u> ¶ 19).  Jewish inmates observed Hanukkah in 2018, as there was an established Jewish group meeting; however, all of the religious foods they requested were not accommodated.  (<u>Id.</u> ¶ 20).

Defendant Wireman now moves for summary judgment.  (Docs. 32, 33).  Carter failed to respond to defendant's motion and the time for responding has now passed.[3]  Therefore, the motion is deemed unopposed and ripe for resolution.

## II.   <u>Legal Standard</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence

---

[3]  Carter was directed to file a brief in opposition to defendant's motion for summary judgment and was admonished that failure to file an opposition brief would result in defendant's motion being deemed unopposed.  (Doc. 36 (citing M.D. PA. LOCAL RULE OF COURT 7.6)).

must be adequate, as a matter of law, to sustain a judgment in favor of the non-

moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986);

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

also FED. R. CIV. P. 56(a), (e).  Only if this threshold is met may the cause of action

proceed.  Pappas, 331 F.Supp.2d at 315.

## III.   Discussion

### A.   Constitutional Claims

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

The doctrine of qualified immunity protects a state actor who has committed

a constitutional violation if the plaintiff's rights were not "clearly established" when

the individual acted.  Pearson v. Callahan, 555 U.S. 223, 244-45 (2009).  "Qualified

immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. at 231.  "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).  The burden to establish qualified immunity rests with the defendant claiming its protection.  Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established" at the time of the alleged violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).  In addressing Carter's First and Fourteenth Amendment claims, we only reach the first prong of the qualified immunity analysis.

### 1.    *First Amendment*

Carter challenges a policy at SCI-Huntingdon as being violative of the Free Exercise Clause of the First Amendment.  The First Amendment provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. CONST. amend. 1.  It offers

protection for a wide variety of expressive activities, which are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  Turner v. Safley, 482 U.S. 78, 89 (1987).  Although prisoners must be afforded "reasonable opportunities" to exercise the religious freedoms guaranteed by the First Amendment, see Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment right to the free exercise of religion, see O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987).  Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection.  Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); see also Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) (identifying three indicia of religion as (1) attempting to address "fundamental and ultimate questions having to do with deep and imponderable matters," (2) being "comprehensive in nature," consisting of a "belief system" rather than "isolated teachings," and (3) recognizing the "presence of certain formal and external signs" such as the clergy and observance of holidays).  Defendant does not appear to dispute that Carter's sincerely held religious beliefs are entitled to constitutional protection.

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the United States Supreme Court's Turner v. Safley test must be applied to determine whether the curtailment at issue is reasonably related to penological interests.  DeHart, 227 F.3d at 51.  "[Turner] directs courts to

assess the overall reasonableness of such regulations by weighing four factors. 'First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,' and this connection must not be 'so remote as to render the policy arbitrary or irrational.' Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right.  Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally.  And fourth, a court must consider whether there are alternatives to the regulation that 'fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests.'" DeHart, 227 F.3d at 51, quoting Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (internal citations omitted). "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity." Id. at 59.

The most important prong of the Turner analysis requires a rational connection between the policy and the legitimate governmental interest that justifies it.  Nasir v. Morgan, 350 F.3d 366, 372 (3d Cir. 2003).  "According to Turner, a regulation will be sustained unless 'the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.'" Id., citing Turner, 482 U.S. at 89-90.  "'[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003).

With respect to the first <u>Turner</u> factor, defendant contends that the policy of which Carter complains is rationally related to legitimate penological goals. As set forth in the statement of material facts, *supra*, the policy is in place for reasons which are rationally related to valid legitimate correctional interests such as security concerns and the lack of an organized Wiccan-Pagan group at SCI-Huntingdon. (Doc. 34 ¶¶ 12-14). This uncontroverted evidence demonstrates that the policy and practices challenged by Carter are rationally related to valid legitimate penological interests. The first <u>Turner</u> factor weighs in favor of defendant.

As to the second factor, it is undisputed that SCI-Huntingdon timely provided Carter with a Yule compliant meal by ensuring that pork and an apple were served, providing fresh fruit in the mainline meals, and offering tea from the commissary, and that SCI-Huntingdon permitted prayer in Carter's cell. (Doc. 34 ¶¶ 15-19). Carter does not dispute that SCI-Huntingdon provided him with these opportunities to practice his religion. (<u>See</u> Doc. 35-3 at 6). The second <u>Turner</u> also factor weighs in favor of defendant. <u>See</u> <u>Williams</u>, 343 F.3d at 219.

With respect to the third factor, defendant has articulated the impact that accommodation of Carter's requests, beyond the accommodations already in place, would have on prison guards, other inmates, and on the allocation of prison resources generally. (Doc. 33 at 8-9; Doc. 34 ¶ 12). Specifically, accommodating Carter's special requests would foster favoritism and result in increased prison costs. This factor weighs in favor of defendant Wireman.

Finally, "the [fourth factor] inquiry is whether there are alternatives that would impose only '*de minimis* cost to valid penological interests.'" <u>Fraise v. Terhune</u>, 283 F.3d 506, 520 (3d Cir. 2002) (quoting <u>Turner</u>, 482 U.S. at 91). The record demonstrates that SCI-Huntingdon provides religious accommodations to its inmates. It also shows that additional alternatives cannot be provided at a *de minimis* cost, monetary, or otherwise. There is evidence that providing a specific Yule feast would increase costs and would jeopardize staff and inmate security and the orderly administration and operation of the prison.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. <u>Williams</u>, 891 F.2d at 460. Carter has wholly failed to meet this burden in that he neglected to oppose defendant's motion for summary judgment. Despite his failure to oppose the motion, it is clear on the record that SCI-Huntingdon took Carter's request for religious accommodation seriously and made a good faith effort to accommodate Carter's rights within the constraints of appropriate and reasonable institutional security concerns. Defendant Wireman is therefore entitled to an entry of summary judgment on Carter's First Amendment claim. Because Carter failed to establish a First Amendment violation, defendant Wireman is entitled to qualified immunity.

> 2.    ***Fourteenth Amendment***

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. See id. Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination to state an equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The plaintiff must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Prison inmates are not members of a protected class. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class).

Carter asserts that members of other religious groups, specifically Jewish inmates, were provided certain food items during Hanukkah in 2018. This claim without merit. Any inmate seeking an accommodation must follow the procedures set forth in DC-ADM 819. (Doc. 34 ¶ 13). Carter's request received the same method of review and evaluation by the prison staff and the RARC. Carter's affiliation with a particular faith group was not the reason for the denial of his requests. Rather, the denial was based on security reasons and the lack of an

established Pagan-Wiccan group meeting at SCI-Huntingdon, as required by
Department policy.  (Id. ¶¶ 12, 14).  Further, the uncontroverted evidence
establishes that while Jewish inmates were permitted to celebrate Hanukkah in
2018, because there was an established group meeting, their specific religious foods
were *not* accommodated.  (Doc. 34 ¶ 20; Doc. 35-4 at 2).  Accordingly, the court will
grant defendant's motion for summary judgment with respect to Carter's
Fourteenth Amendment equal protection claim.

      **B.**     **Religious Land Use and Institutionalized Persons Act of 2000**

      Section 3 of  the Religious Land Use and Institutionalized Persons Act of
2000 ("RLUIPA") provides, in relevant part, that "[n]o government shall impose a
substantial burden on the religious exercise of a person residing in or confined to
an institution . . . even if the burden results from a rule of general applicability,"
unless the government establishes that the burden furthers "a compelling interest,"
and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2).  RLUIPA
defines "religious exercise" to include "any exercise of religion, whether or not
compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A);
see also Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).  Although Congress intended
that RLUIPA be construed "in favor of broad protection of religious exercise," see
42 U.S.C. § 2000cc-3(g), Congress also "anticipated that courts would apply the Act's
standard with 'due deference to the experience and expertise of prison and jail
administrators in establishing necessary regulations and procedures to maintain
good order, security and discipline, consistent with consideration of costs and

limited resources.'"  <u>Cutter</u>, 544 U.S. at 723.  Congress indicated that in the event an inmate's request for religious accommodation would "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition."  <u>Id.</u> at 726.

### 1.   *Monetary Damages*

#### a.   <u>**Individual Liability**</u>

Carter cannot recover monetary damages against defendant Wireman in his individual capacity under RLUIPA.  It is well-settled that RLUIPA does not permit an action for damages of any sort against state officials in their individual capacities.  <u>See</u> <u>Sharp v. Johnson</u>, 669 F.3d 144, 155 (3d Cir. 2012).  Defendant's motion for summary judgment will be granted in this regard.

#### b.   <u>**Official Capacity**</u>

Conversely, Carter can proceed against defendant Wireman in his official capacity.  <u>See</u> <u>Kelley Bey v. Keen</u>, No. 13-CV-1942, 2014 WL 3563475, at *13 (M.D. Pa. July 17, 2014) (holding that official capacity RLUIPA claims against county officials was not barred by the Eleventh Amendment which only applies to states (citing <u>Opulent Life Church v. City of Holly Springs, Miss.</u>, 697 F.3d 279, 289-90 (5th Cir. 2012) (holding that while states may not be held liable for money damages under RLUIPA, municipalities and counties may)).

Under RLUIPA, the plaintiff must show that his religious exercise has been burdened substantially by the challenged conduct.  <u>Washington v. Klem</u>, 497 F.3d

272, 277-78 (3d Cir. 2007).  "[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." Id. at 280.  The plaintiff bears the initial burden of demonstrating that a prison institution's policy or official practice has substantially burdened the inmate's religious practice.  Holt v. Hobbs, 574 U.S. 352, 360 (2015).  If the plaintiff shows that prison administrators' actions or inactions have imposed a substantial burden on the exercise of his religion, the burden shifts to the prison administrator to establish that the challenged conduct furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest.  Id. at 362.

The initial burden falls on Carter to demonstrate that SCI-Huntingdon's policy has substantially burdened the practice of his religion.  As set forth above, Carter has failed to establish any substantial or undue burden on his exercise of religious beliefs.  Moreover, Carter has failed to oppose defendant's motion for summary judgment, and he presents nothing beyond the mere *allegata* of his pleadings.  Nor can we discern any such burden from the record before us.  Carter was able to pray and conduct religious rituals in his cell and was provided a Yule

compliant meal.  Accordingly, summary judgment in favor of defendant Wireman is appropriate.

**IV.**    **<u>Conclusion</u>**

We will grant defendant's motion (Doc. 32) for summary judgment in its entirety.  An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        May 2, 2022